**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

*In Re* STAT EMERGENCY MEDICAL
SERVICES, INC.,
                    Debtor,

CHARLES M. MOURANIE,
LIQUIDATING TRUSTEE,

                    Appellant,                              Case No. 25-cv-12815

v.                                                          Hon. Brandy R. McMillion
                                                            United States District Judge
CONSTANCE CHEATEM,

                    Appellee.
_____/

## OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S DENIAL OF SUMMARY JUDGMENT AND DISMISSAL OF THE COMPLAINT

The instant appeal arises from an adversary proceeding within the larger Chapter 11 bankruptcy proceedings of STAT EMERGENCY MEDICAL SERVICES, Inc. ("STAT EMS" or "Debtor") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"). During the course of the Chapter 11 proceedings, the Liquidating Trustee of STAT EMS, Charles M. Mouranie ("Appellant" or "Trustee"), filed an adversary complaint (the "Complaint") against Constance Cheatem ("Appellee"), alleging two causes of action to recover expenses allegedly incurred by STAT EMS in training the Appellee to be a certified emergency medical technician. Appellant moved for summary

1

judgment under Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056, and the Defendant did not file a response to the motion.[1]  *See* ECF No. 1, Page ID.9, 15.  The Bankruptcy Court heard oral argument on the motion on June 25, 2025, which Defendant did not attend.  ECF No. 1, PageID.15. Nonetheless, the Bankruptcy Court issued a ruling on Plaintiff's motion without any prejudice to the Defendant because the court ruled in the Defendant's favor.  *Id.*  On August 19, 2025, the Bankruptcy Court issued its Opinion and Order Denying Plaintiff's Motion for Summary Judgment and Dismissing Complaint.  *See generally* ECF No. 1, PageID.7-23.  On appeal, the Trustee challenges the Bankruptcy Court's grounds for denial of its motion and dismissal of the Complaint.  For the reasons explained below, the Court hereby **AFFIRMS** the Order denying the motion and dismissing the Complaint pursuant to Fed. R. Civ. P. 56.[2]

---

[1] Federal Rule of Bankruptcy Procedure 7056 provides that Fed. R. Civ. P. 56 applies in adversary proceedings.

[2] The Appellee did not file a response to the Appellant's brief, thus prohibiting her from participating in oral arguments on the brief.  Fed. R. App. P. 31(c).  *See In re Popovich*, No. 10-14199, 2014 WL 1419045, at *1 (E.D. Mich. Apr. 14, 2014) ("This is the only sanction authorized by the rules . . . coincid[ing] with an appellate court's duty to affirm a judgment on any ground . . . supported by the record, even in the absence of an opposing brief.") (citing *Lampe v. Kash,* 735 F.3d 942, 943 (6th Cir. 2013); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1478 (9th Cir. 1992)).  The Court has reviewed the record and is satisfied that it can proceed without oral argument.  E.D. Mich. LR 7.1(f).  Further, the Court will rule based on the Appellant's briefing without prejudicing the Appellee because the Court is affirming the Bankruptcy Court's Order.

## I.

On September 22, 2022, Appellee Constance Cheatem signed the American Training Institute-STAT EMS EMT-B Scholarship Program Agreement (the "Program Agreement") with STAT EMS.  ECF No. 1, PageID.10.  Under the Program Agreement, Appellee elected to enroll in the ATI EMT-Basic Course through STAT EMS's partnership with ATI (the "ATI Program"), and STAT EMS agreed to loan $5,500 for tuition, equipment, supplies, insurance, and educational support services.  ECF No. 7-1, PageID.57.  The Program Agreement further provided that, upon completion of the ATI course and after obtaining a Michigan EMT-Basic license, Appellee agreed to work for STAT EMS for 18 months following successful completion of the employment probationary period.  *Id.*

The Agreement also provided that Appellee would owe STAT EMS $5,500 if she dropped out of or self-terminated the course, was dropped or terminated from the course, failed to pass the National Registry written exam within the allotted attempts and timeframe, failed to complete required pre-employment checks, or had her employment terminated during the 120-day probationary period or the agreed-upon employment period.  ECF No. 7-1, PageID.58.  In the final paragraph, the Agreement stated that Appellee would be responsible for repaying the $5,500 tuition fee if she left the program, if her employment with STAT EMS ended within the designated timeframe for any reason, or if she did not become a licensed EMT-Basic

3

within the designated timeframe. *Id.* at PageID.58. The Agreement was signed by Marc Lund, then CEO of STAT EMS, and by Appellee, who was identified as an "Emergency Medical Technician Academy Cadet." *Id.*

In addition to the Program Agreement, Appellee also signed a non-competition agreement with a two-year term covering Genesee, Saginaw, Livingston, and Oakland Counties, as well as provisions addressing the non-solicitation of EMS customers and the non-disclosure of proprietary information. ECF No. 7-1, PageID.59. In her answer to the Complaint, Appellee asserted that she completed her training in November 2022 and timely passed the National Exam in December 2022. ECF No. 5, PageID.34. Appellee began working as a paid employee at STAT EMS in December 2022. *Id.* Appellee further stated in her answer that STAT EMS stopped paying her for hours worked in February 2023. *Id.* Appellee became aware in March 2023 of STAT's financial difficulties and believed she would lose her employment because the company was under investigation for financial crimes. *Id.* Appellee maintained that she neither resigned nor was terminated, and that her employment ended in March 2023 when STAT shut down its EMT operations. *Id.*

STAT EMS filed a voluntary Chapter 11 Subchapter V bankruptcy petition on July 5, 2023. ECF No. 5, PageID.31. On March 10, 2025, Appellant, formerly the Subchapter V Trustee and later the Liquidating Trustee under the Debtor's

confirmed chapter 11 plan, filed a two-count Complaint against Appellee. *Id.* at PageID.31-33. Count I, labeled "Open Account," alleged that the Debtor sold goods and services to Appellee, incurred costs and expenses at Appellee's request, and sought to recover $5,500 under 11 U.S.C. § 542(b). *Id.* at PageID.32. The Complaint also alleged that a demand for payment had been sent to Appellee by first-class mail. *Id.*

Count II, labeled "Account Stated," alleged that the Debtor rendered a statement of account to Appellee and sought turnover of the alleged debt as property of the estate under 11 U.S.C. § 542. ECF No. 5, PageID.32-33. The Bankruptcy Court noted that, in addition to this adversary proceeding, Appellant filed identical adversary complaints against 18 other former STAT employees, two of which were voluntarily dismissed, and Appellees in the remaining cases defaulted. ECF No. 1 at PageID.14. On May 14, 2025, the Bankruptcy Court held an initial scheduling conference, which Appellee did not attend despite having been given notice, and set a May 29, 2025, deadline for Appellant to file a motion for summary judgment and a June 25, 2025, hearing date. *Id.*

On May 29, 2025, Appellant filed a motion for summary judgment asserting that Appellee breached the Agreement when her employment terminated before she completed the required period of employment. ECF No. 5, PageID.36-38. Appellant's motion specifically asserted that the Debtor engaged in a contract with

Appellee on September 22, 2022, paid monies for tuition reimbursement, and that Appellee's employment was terminated on February 20, 2023, causing a breach of contract. *Id.* at PageID.37. Appellee did not file a response to the motion. ECF No. 7, PageID.15. On June 25, 2025, the Bankruptcy Court held the adjourned initial scheduling conference and heard oral argument on the motion, then raised a preliminary issue concerning whether the training expenses were recoverable under Michigan law in light of *Sands Appliance Services, Inc. v. Wilson*, 615 N.W.2d 241, 248 (Mich. 2000). Since Appellant's motion did not address that issue, the Bankruptcy Court ordered supplemental briefing and adjourned the hearing. *Id.* After taking the matter under advisement, the Bankruptcy Court issued its Opinion and Order denying summary judgment for the Appellant and dismissing the Complaint on the grounds that the Program Agreement was unenforceable under MCL § 408.478 and the Michigan Supreme Court's holding in *Sands Appliance Services*. *See generally* ECF No. 7, PageID.7-23.

## II.

District Courts review appeals from bankruptcy court decisions under the standards of review normally applied by a federal appellate court. *In re H.J. Scheirich Co.,* 982 F.2d 945, 949 (6th Cir. 1993); *see also In re Rice*, 478 B.R. 275, 278 (E.D. Mich. 2012). Further, "[t]he standard of review on appeal is determined

by the nature of the action taken below by the bankruptcy court." *Terex Corp. v. Metro. Life Ins. Co. (In re Terex Corp.)*, 984 F.2d 170, 172 (6th Cir. 1993).

The Court reviews a bankruptcy court's findings of fact under the clearly erroneous standard. Fed. R. Bankr. P. 8013. "A finding of fact is clearly erroneous 'when[,] although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re Matthews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, (1985)). Conversely, a bankruptcy court's conclusions of law are reviewed de novo. *Nuvell Credit Corp. v. Westfall (In re Westfall)*, 599 F.3d 498, 501 (6th Cir. 2010). Meaning the Court reviews the law independently, without any deference to the bankruptcy court's conclusions. *Myers v. IRS (In re Meyers)*, 216 B.R. 402, 403 (B.A.P. 6th Cir. 1998). "[I]f a question is a mixed question of law and fact, then [the reviewing court] must break it down into its constituent parts and apply the appropriate standard of review for each part." *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993); *In re Van Kehrberg*, 628 B.R. 535, 541 (E.D. Mich. 2021).

The Court will grant summary judgment if "the movant shows that there is no genuine dispute on any material fact and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

7

There is a genuine dispute of material fact when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the nonmoving party only when there exists "a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A court may enter summary judgment *sua sponte* in favor of a nonmoving party so long as the losing party was on notice to present all desired evidence on the matter at issue." *Howard v. Seifert J.*, No. 4:23-CV-12549, 2024 WL 5294576, at *5 (E.D. Mich. Oct. 4, 2024), *report and recommendation adopted,* No. 23-12549, 2024 WL 5004324 (E.D. Mich. Dec. 6, 2024) (quoting *QSI Holdings, Inc. v. Alford*, 382 B.R. 731, 736 (W.D. Mich. 2007), *aff'd sub nom. In re QSI Holdings, Inc.*, 571 F.3d 545 (6th Cir. 2009).

## III.

Appellant asks this Court to find that the Bankruptcy Court erred in: (1) holding that STAT EMS's education/reimbursement program was involuntary; and (2) holding that the Wage and Fringe Benefits Act ("WFBA") prohibited the collection of such educational costs from employees. ECF No. 7, PageID.53, 55. As evidence to support the Trustee's motion before the Bankruptcy Court and appeal

before this Court, the Trustee offered the Program Agreement and the Supplemental

Affidavit of former STAT EMS President, Stephen M. Lund (the "Lund Affidavit").

ECF No. 7-1, PageID.57-61; ECF No. 7-2; PageID.63-64.[3] Relevant portions of the

Program Agreement expressly provided:

> [Appellee] will receive the entire American Training Institute Course . . . ***as necessary to successfully retain sustained employment at STAT EMS*** and in the field of Emergency Medical Services[]
>
> . . . .
>
> ***Upon completion of the ATI course and after obtaining the Michigan EMT Basic License***, I agree to work for STAT EMS for a period of 18 months
>
> . . . .
>
> I understand that I ***must*** successfully complete ***all of STAT EMS' pre-employment requirements***, including, ***but not limited to*** . . . . I understand that if I fail to successfully complete any of the above required pre-employment checks that ***I will not be hired by STAT EMS and I agree to pay STAT EMS the course tuition*** of $5500.00 . . . .

ECF No. 7-1, PageID.57-58 (emphasis added). The Lund Affidavit attests that the

ATI Training Program and Program Agreement were voluntary, as Appellee could

elect to obtain training elsewhere, and were intended to make potential employees

eligible for higher pay. ECF No. 7-2, PageID.63. On appeal, Appellant reiterates

---

[3] To the extent Appellant appeared to suggest that the record is limited to the exhibits attached to their brief, that characterization is incomplete. ECF No. 7, PageID.53. The Court may consider the full designated record in reviewing the Bankruptcy Court's decision. Fed. R. Bankr. P. 8009(a); *In re Pankey*, 392 B.R. 710, 723 (E.D. Mich. 2008). The record on appeal, as defined by Federal Rule of Bankruptcy Procedure 8009(a), consists of the materials designated from the proceedings before the Bankruptcy Court. The Court's review is therefore limited to the record developed below, though it does not extend to materials not presented to the Bankruptcy Court. Fed. R. Bankr. P. 8009(a); *In re Pankey*, 392 B.R. at 723.

this position in part, arguing that the Program Agreement is enforceable under Michigan law because Appellee had the option to complete her EMT training through other means and elected to complete it through the ATI-STAT EMS Partnership.[4] *Id.* at 53-55.  The Court disagrees.

In 2000, the Michigan Supreme Court held that an employer's tuition contract was void and unenforceable under the WFBA because the contract constituted a demand for payment of "remuneration or consideration" as a condition of employment since the "[d]efendant could not work for plaintiff without submitting to its repayment provisions." *Sands Appliance Services, Inc. v. Wilson*, 615 N.W.2d 241, 248 (Mich. 2000).  There, Sands Appliance Services required the plaintiff to sign a "tuition contract," under which he was obligated to make monetary payments in consideration for his training if he did not complete six years of employment. *Id.* The *Sands* court reasoned that the contract "represent[ed] remuneration and consideration that ran from defendant to plaintiff" because the employer "required that defendant grant it a contractual right to financial recovery in the event he did

---

[4] The Appellant's brief before this Court makes no reference to the portion of the Lund Affidavit that claims the ATI Training Program and Program Agreement were intended to make potential employees eligible for higher pay than if they did not have the training.  The Court reads the Appellant's brief and the Program Agreement to suggest that EMT training and certification were, in fact, mandatory qualifications for the position. *See* ECF No. 7, PageID.53; ECF No. 7-1, PageID.57.  Moreover, to the extent that the Lund Affidavit implies that Appellee's licensure was not a requirement for the position, that assertion is false, as the Michigan Public Health Code provides that no "individual shall . . . practice a[n] emergency medical technician[] . . . unless licensed by the department under this section." Mich. Comp. Laws § 333.20950(1).

10

not complete six years of employment[.]" *Id.* at 247. The relevant portion of the

WFBA, as amended by the Michigan Legislature in 2023, provides:

> Sec. 8. (1) Except as otherwise provided in this subsection, an employer, agent or representative of an employer, or other person having authority from the employer to hire, employ, or direct the services of other persons in the employment of the employer shall not demand or receive, directly or indirectly from an employee, a fee, gift, tip, gratuity, or other remuneration or consideration, as a condition of employment or continuation of employment. This subsection does not apply to any of the following:
> . . .
>
> (c) Remuneration or consideration collected by an employer under an ***optional*** education repayment agreement in which the employer offers to fund an employee's education with the understanding that the employee will repay the costs incurred unless the employee remains with the employer for a specific period.

MICH. COMP. LAWS § 408.478 (2023). The *Sands* court and the amended statutory

provision alike hinge the enforceability of an education/reimbursement provision on

whether the education itself was optional, not the means through which that

education was obtained. Even the Appellant partially acknowledges this in their

appellate brief, albeit while incorrectly suggesting that the amended law overturned

the *Sands* holding. ECF No. 7, PageID.54 ("[MCL § 408.478 (2023)] allow[s] the

reimbursement provided there is no ***compelling or requirement*** that the employee

engage in in [sic] ***a*** training program.")

On the contrary, the Michigan Supreme Court also contemplated

circumstances in which an education/reimbursement program is optional rather than

mandatory, determining that the operative question was whether the education/reimbursement program was a condition of employment. *Sands*, 615 N.W.2d at 247-248. The 2023 amendment to § 408.478 appears to have codified the distinction observed by the court. As the court also noted in *Sands*, the WFBA "evinces a legislative purpose to prohibit the selling of jobs . . . . [and] to prevent kickbacks or payments of any kind to an employer in return for employment or its continuation." 615 N.W.2d at 247. The parties' agreement aims to do exactly what the Legislature intended to prevent, under both the old and new versions of the statute, by requiring the employee to confer a contractual right of financial recovery on the employer for mandatory training as a prerequisite to obtaining or maintaining employment.

As such, the Program Agreement is sufficiently similar in nature to that contemplated by the court in *Sands*, such that it appears to contravene its holding as well as the current language in §408.478. The argument that the reimbursement provisions are enforceable under applicable Michigan law because Appellee had the option to obtain her EMT training through other means is an unpersuasive, mischaracterization of the law and the Program Agreement's explicit terms. When training is mandatory for employment, and the employee must agree to repayment terms to access that training, both the training and repayment obligation are conditions of employment. The Court does note that the agreement in the present

12

case expressly states that Appellee "elect[ed] to take advantage" of the ATI Training Program.  ECF No. 7-1, PageID.57.  However, this is not dispositive as a matter of law, where other language in the agreement, taken together, clearly conditioned Appellee's employment upon completion of the ATI Training Program and required Appellee to repay STAT EMS if she failed to meet her contractual obligations.

Regardless of whether STAT EMS offered Appellee the option to train with ATI or another training service, Appellee's EMT training and certification were not optional.  It was a requirement for employment with STAT EMS and in the Emergency Medical Services field. The language of the agreement, moreover, expressly hinges her obligation to repay STAT EMS upon her completion of the ATI Training Program and, subsequently, 18 months of employment at STAT EMS. Thus, the Program Agreement clearly violates both MCL § 408.478 and the rule in *Sands*.  Perhaps, if the Program Agreement explicitly stated that Appellee did not need *any* EMT training or certifications in order to work for STAT EMS, but was electing to complete the ATI program at no cost to her in exchange for working at STAT EMS for 18 months, the Court would be inclined to agree with Lund's and Trustee's assertions.  That is not the case here.  The "option" to seek her training elsewhere does not employ the same meaning as "optional" under the statute; as the Program Agreement plainly states that Appellee's completion of the ATI Training

13

Program was "necessary to successfully retain sustained employment at STAT EMS." ECF No. 7-1, PageID.57.

Thus, the Appellant has failed to prove it is entitled to summary judgment as a matter of law. Additionally, the illegality of the Program Agreement's substance renders the contract unenforceable under MCL § 408.478, warranting dismissal of the Trustee's Complaint. Consequently, the Bankruptcy Court was correct in its ruling, and this Court affirms that decision.

**IV.**

Because the Program Agreement conditioned Appellee's employment and repayment obligations upon her completion of the ATI program and continued employment at STAT EMS for 18 months, the Court finds that the Bankruptcy Court did not err in holding that STAT EMS's education/reimbursement program was involuntary; and, therefore, unenforceable under MCL § 408.478's prohibition on the collection of mandatory educational costs from employees.

Accordingly, the Bankruptcy Court's Order denying Appellant's Motion for Summary Judgment and dismissing the Complaint is hereby **AFFIRMED** in all respects. The adversary proceeding remains **DISMISSED** in its entirety.

**IT IS SO ORDERED.**

Dated: March 26, 2026                s/Brandy R. McMillion
       Detroit, Michigan               HON. BRANDY R. MCMILLION
                                           United States District Judge